Adam **GOETZ**, Plaintiff and Appellant,

v.

**AMERICAN RELIABLE INSURANCE COMPANY**, Defendant and Appellee.

No. 910741–CA.

Court of Appeals of Utah.

Dec. 11, 1992.

Daniel L. Wilson, Ogden, for plaintiff and appellant.

Wendell E. Bennett, Salt Lake City, for defendant and appellee.

Before BENCH, BILLINGS and ORME, JJ.

## OPINION

ORME, Judge:

Appellant, Adam Goetz, appeals the district court's grant of summary judgment for appellee, American Reliable Insurance Company, claiming the trial court erred in ruling that appellant could not collect personal injury protection benefits both from the insurer of the vehicle involved in a collision and from his automobile insurer, American Reliable. We affirm.

## FACTS

On May 21, 1990, appellant applied for automobile insurance coverage for a 1986 Nissan pick-up. Appellant applied for the following coverage: (1) bodily injury public liability, $20,000 each person/$40,000 each occurrence; (2) property damage liability, $10,000 each accident; (3) statutory personal injury protection (PIP), including the sum of $3,000 for medical payments under that coverage; (4) collision coverage with a $500 deductible; and (5) damage other than collision with a $500 deductible.

American Reliable Insurance company issued a policy conforming with the application made by appellant. The policy consisted of a policy declarations sheet, a Family Car Policy, and a Utah Personal Injury Protection Endorsement. Appellant claims he did not receive these documents prior to the accident in question.

On May 28, 1990, appellant was operating a vehicle owned by a friend and insured by Government Employees Insurance Company (GEICO) when he collided with a moose. As a result of injuries sustained in the accident, appellant claims he incurred over $6,000 in medical expenses. He received from GEICO, the carrier which insured the vehicle involved in the accident, maximum benefits of $3,000 for medical expenses.

Appellant also filed a claim for benefits through his own automobile insurance carrier, American Reliable. American Reliable's policy provided for a maximum of $3,000 medical benefits under its no-fault PIP provisions. The policy also contained the following "other insurance" provision in its Personal Injury Protection Endorsement:

OTHER INSURANCE

[1] No eligible injured person shall recover duplicate benefits for the same elements of loss under this or any similar insurance.

[2] If an eligible injured person who is a named insured, a relative, or person who is injured in an accident involving the use of an insured motor vehicle, has other similar insurance applicable to the accident, the maximum recovery under all such insurance shall not exceed the amount which would have been payable under the provisions of the insurance providing the highest dollar limit. We shall not be liable for a greater propor-

tion of any loss to which this coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of liability of this coverage and such other insurance.

[3] If an eligible insured is also an insured under any other policy, primary coverage is given by the policy insuring the motor vehicle in use during the accident.

American Reliable refused payment on the ground that the policy issued to appellant specifically prohibited "stacking" of no-fault benefits, and that the anti-stacking provisions of the policy were enforceable. This action ensued.

Both parties filed motions for summary judgment, claiming there were no disputed issues of material fact in the case.[1] The trial court denied appellant's motion for summary judgment and granted American Reliable's summary judgment motion. In granting American Reliable's motion, the trial court determined that since Goetz had already received $3,000 in PIP benefits under the policy covering the involved motor vehicle, which was equal to the PIP benefits under the American Reliable policy, and since the American Reliable policy contained an anti-stacking provision, Goetz was not entitled to any payments from American Reliable under its policy.

On appeal, appellant Goetz argues the trial court erred in granting summary judgment for American Reliable. Appellant contends he is entitled to payment of $3,000 toward his unreimbursed medical expenses from American Reliable for several reasons: (1) the express terms of the American Reliable insurance policy provide for excess coverage; (2) the provisions of the American Reliable insurance policy are ambiguous and therefore must be construed against the insurer and in favor of coverage; (3) the reasonable expectations of the parties require that coverage be extended to include this situation; and (4) Utah's No–Fault Insurance Code does not prohibit "stacking" of PIP benefits, and

therefore does not prevent coverage in this situation. In the alternative, appellant contends that even if American Reliable's interpretation of the policy is valid, he is entitled to a trial to determine whether a copy of the endorsement was provided to him prior to the accident. He claims if it was not, its provisions cannot be applied to him.

## STANDARD OF REVIEW

"By definition, a summary judgment is based solely on conclusions of law. Therefore, we review a summary judgment for correctness, without deferring to the trial court's legal determinations." *Allen v. Prudential Property & Cas. Ins. Co.,* 839 P.2d 798, 800 (Utah 1992). *See Transamerica Cash Reserve, Inc. v. Dixie Power & Water, Inc.,* 789 P.2d 24, 25 (Utah 1990); *Bonham v. Morgan,* 788 P.2d 497, 499 (Utah 1989). With the exception already noted, *see* note 1, *supra,* neither Goetz nor American Reliable contends the relevant facts are disputed, and Goetz focuses his arguments on the trial court's legal conclusions. Thus, we review the trial court's legal conclusions for correctness.

## STACKING OF PERSONAL INJURY PROTECTION BENEFITS

American Reliable contends this court's decision in *Crowther v. Nationwide Mutual Insurance Co.,* 762 P.2d 1119 (Utah App.1988), addressing the permissibility of "stacking" of PIP benefits, governs the instant case. In that case, an injured pedestrian sought to collect no-fault benefits from both her insurance carrier and from the insurer of the vehicle that struck her. Crowther incurred medical expenses exceeding the combined limits on medical expenses in both policies. In sustaining the trial court's grant of summary judgment for the pedestrian's automobile insurance carrier, the *Crowther* court recognized that "either by . . . its silence on the subject" or by the "primary coverage" language of Utah Code Ann. § 31–41–7(2) (1974), the

---

1. Whether appellant ever received a copy of the insurance documents is disputed on appeal. As explained later in our opinion, the facts argued

by appellant relative to that issue were not presented to the court in a manner cognizable under Utah R.Civ.P. 56.

Utah Insurance Code permits the "stacking" of no-fault benefits, although it does not require it. *Crowther*, 762 P.2d at 1121.

In *Crowther*, the particular policy provision which was held to prohibit stacking stated: "No insured may receive duplicate benefits under this and any similar insurance." *Id.* at 1120. It also provided that if other similar insurance applied, "all benefits payable cannot exceed the highest available under any one policy." *Id.* The provision did not speak in terms of "primary coverage." *See id.*

American Reliable's provision differs significantly in several respects from the provision at issue in *Crowther*. First, American Reliable's "other insurance" provision, quoted in full above, does not simply proscribe duplicate benefits—it proscribes "duplicate benefits *for the same elements of loss.*" Second, the "highest dollar limit" maximum recovery provision is limited by its terms to accidents where the injured person is a *"named insured, a relative,* or person who is injured in an accident involving the use of an *insured motor vehicle"*— all of which are terms defined with varying degrees of clarity in the endorsement. The similar provision in *Crowther* spoke in simpler terms: "you"; "a relative"; "your auto." *Id.* Third, unlike the policy provision in *Crowther*, American Reliable's "other insurance" provision specifically refers to "primary coverage,"[2] which tends to suggest secondary coverage—and not merely proportional coverage—if two policies apply. Because American Reliable's "other insurance" provision differs significantly from the provision at issue in *Crowther*, we reject American Reliable's argument that *Crowther* controls this case. We must therefore interpret the dissimilar provision at issue here.

### A. Policy's Provision for "Primary Coverage"

■ We may readily dismiss appellant's first argument—that the express terms of the American Reliable policy provide for excess coverage—insofar as it is premised on the third paragraph of the "other insurance" provision containing the "primary coverage" usage.[3] The "primary coverage" provision is limited to situations where an insured, like appellant here, is also an insured under another policy. *See also* Utah Code Ann. § 31A–22–309(4) (Supp.1992).[4] The provision does not contemplate the situation where the appellant is an insured of American Reliable and at the same time is entitled to some benefits from, although *not* an insured of, some other insurer—in this case GEICO. Thus, for example, if appellant's wife owned a car insured by XYZ Insurance Co., whose policy defined appellant as an insured, and appellant was injured when he collided with a moose while driving it, the provision under discussion makes XYZ's policy the primary PIP coverage for appellant, although it may be that secondary, rather than proportional, coverage would be available to him under American Reliable's policy. Since appellant was not an insured under the GEICO policy, the provision has no application and appellant is not entitled to "excess" coverage under this provision.

### B. Ambiguity

■ Appellant also claims the provisions of the American Reliable policy are ambiguous, and therefore must be construed against the insurer and in favor of the insured. We agree that the first paragraph of the "other insurance" provision in American Reliable's PIP endorsement is ambiguous when viewed in isolation. The provision may, despite the extra words, mean the same thing as the provision in

---

**2.** The third paragraph of the "other insurance" provision states, with our emphasis: "If an eligible insured is also an insured under any other policy, *primary coverage* is given by the policy insuring the motor vehicle in use during the accident."

**3.** *See* note 2, *supra.*

**4.** Section 31A–22–309(4), governing "[l]imitations, exclusions, and conditions to personal injury protection," states, with our emphasis, that "[w]hen a person injured is also an *insured party* under any other policy ... primary coverage is given by the policy insuring the motor vehicle in use during the accident." Utah Code Ann. § 31A–22–309(4) (Supp.1992).

*Crowther*, as American Reliable contends.[5] That is, the language inserted in the American Reliable endorsement prohibits stacking of PIP benefits. On the other hand, the "same elements of loss" usage[6] is surely capable of the construction urged by appellant, i.e., in a situation where two policies apply, the provision only proscribes double-payment: Assuming two applicable policies each providing $3,000 in PIP benefits and resulting medical bills of $3,000, the injured collects $3,000, not $6,000. Conversely, if medical bills total $10,000, the provision is not violated in paying the injured a total of $6,000.

This provision is, however, even under appellant's view, a limitation on coverage rather than an expression of coverage. In other words, it sets forth a rule to be used in determining responsibility if more than one policy applies, but is entirely unilluminating in deciding the question of *whether* more than one policy applies. Thus, any ambiguity in the first paragraph of the "other insurance" provision of American Reliable's PIP endorsement is irrelevant since that provision does not aid in determining whether appellant may claim benefits under American Reliable's policy as well as GEICO's.

### C. Limits of Coverage

■ This brings us to the second paragraph of the "other insurance" provision, which does go to the heart of the coverage issue. The first sentence of that paragraph states, with our emphasis:

> If an eligible injured person *who is a named insured, a relative, or person who is injured in an accident involving the use of an insured motor vehicle*, has other similar insurance appli-

cable to the accident, the maximum recovery under all such insurance shall not exceed the amount which would have been payable under the provisions of the insurance providing the highest dollar limit.

This portion of the provision unambiguously fixes a maximum recovery of, in effect, $3,000 in three specific situations:

(1) when the injured person is a named insured;

(2) when the injured person is a relative;

(3) when the injured person is injured in an accident involving an insured motor vehicle.

Despite whatever ambiguity may exist in the third listed situation given the curious definition of "insured motor vehicle" contained in the endorsement,[7] the ambiguity is irrelevant because appellant's status is in the first category not the third, i.e., appellant is the injured person and he is a named insured.

Appellant's argument that the second paragraph of the "other insurance" provision does not apply to the situation in this case is flawed because of grammatical oversight. He would read the "insured motor vehicle" clause into each of (1), (2), and (3) when clearly, given normal rules of punctuation, the clause is only part of (3).

The next sentence in the second paragraph of the provision states: "We shall not be liable for a greater proportion of any loss to which this coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of liability of this coverage and such other insurance." This sentence makes a totally separate point—one that does not expand the maximum recovery available to appellant

---

5. As noted previously, the contractual provision at issue in *Crowther,* which was held to prohibit stacking, provided that "[n]o insured may receive duplicate benefits under this and any similar insurance." *Crowther,* 762 P.2d at 1120. The dissimilar provision in American Reliable's endorsement states, with our emphasis: "No eligible injured person shall recover duplicate benefits for the *same elements of loss* under this or any similar insurance."

6. *See* note 5, *supra.*

7. The PIP endorsement defines "insured motor vehicle" as follows:

> "Insured motor vehicle" means a motor vehicle for which:
> (a) the bodily injury liability insurance of the policy applies and for which a specific premium is charged; and
> (b) the named insured is required to maintain security under the provisions of the Utah Automobile Financial Responsibility of Motor Vehicle Owners and Operators Act.

but rather limits American Reliable's contribution thereto in those situations when multiple insurers are on the hook. Accordingly, appellant is entitled to his $3,000 (or whatever is the highest policy limit), but American Reliable's responsibility is proportional. This is an exercise in simple arithmetic, not incomprehensible "higher mathematics" as appellant argues. If there is a second insurer with a $3,000 PIP exposure, American Reliable pays $1,500; if there is a third, American Reliable pays $1,000.

Where, as here, the maximum dollar limit for medical expenses under American Reliable's policy was paid to appellant by GEICO, the entirety of appellant's recoverable benefits has been supplied by one insurance company, and, under the first sentence of paragraph 2 of the endorsement, he is entitled to no more.

## APPELLANT'S ADDITIONAL CLAIMS

Three additional points merit comment. First, appellant relies on language in *Wagner v. Farmers Insurance Exchange*, 786 P.2d 763 (Utah App.1990), for the proposition that certain provisions in an insurance contract that are "against the reasonable expectations of the parties may be found void in appropriate circumstances."[8] *Id.* at 766. In *Wagner*'s formulation of the reasonable expectations doctrine, the court must determine "first, whether the insurer knew or should have known of the insured's expectations; second, whether the insured created or helped to create these expectations; and third, whether the insured's expectations are reasonable." *Id.* Based on this formulation of the reasonable expectations doctrine, appellant argues that American Reliable should have known their insured would expect that the policy issued would be deemed to provide excess coverage for medical payments, that American Reliable created these reasonable expectations in the clear language of its policy, and that appellant's expectations are reasonable.

While it is debatable whether *Wagner* actually adopted the "reasonable expectations" doctrine, *see id.* at 770 (Orme, J., concurring) (agreeing with court's perceived holding that "it is unnecessary in this appeal to definitively accept or to definitively reject the 'reasonable expectations' doctrine"), the Utah Supreme Court has categorically rejected the concept. *See Allen v. Prudential Property & Cas. Ins. Co.*, 839 P.2d 798, 806 (Utah 1992) (declining "to adopt the *Wagner* reasonable expectations approach").

Second, appellant looks to the language contained in the "other insurance" provision in the actual insurance policy, claiming it clearly and unequivocally describes the policy's coverage as "excess over other collectible car medical payments insurance."[9] Appellant's cause is not aided by looking beyond the PIP endorsement to the basic policy, because if the policy is considered, it must be considered in its totality rather than selectively. Undertaking such analysis, one never gets to the "excess coverage" provision, which is contained in the Medical Payments section of the policy. The second sentence of the entire policy clearly specifies that appellant enjoyed only "the coverages for which a premium is shown on [the] declarations page." The declarations page shows no premium for medical payments coverage of the sort described in the policy and affirmatively directs the policy holder to the PIP endorse-

8. Generally, the reasonable expectations doctrine "authorizes a court confronted with an adhesion contract to enforce the reasonable expectations of the parties under certain circumstances." *Allen v. Prudential Property & Cas. Ins. Co.*, 839 P.2d 798, 801 (Utah 1992) (citing Roger C. Henderson, *The Doctrine of Reasonable Expectations in Insurance Law After Two Decades*, 51 Ohio St.L.J. 823 (1990)).

9. The policy stated in bold lettering, under the heading "Other Insurance":

If other Medical Payments covers a loss we cover, we will pay only our share of that loss. That share is our proportion of the total car Medical Payments insurance that applies to the loss.
HOWEVER, FOR NON–OWNED AUTOS AND SUBSTITUTE MOTOR VEHICLES, THIS POLICY IS EXCESS OVER OTHER COLLECTIBLE CAR MEDICAL PAYMENTS INSURANCE.

ment for a statement of benefits available thereunder in lieu of regular medical benefits. Thus, the policy provision relied on by appellant was, by the terms of the printed policy, not part of his contract.

 Finally, appellant claims he never received any of the insurance documents, much less a copy of the endorsement. Appellant argues that in order for an endorsement to be effective in limiting coverage, the insured must be provided a copy of such endorsement. *See generally Farmers Ins. Exch. v. Call,* 712 P.2d 231, 236–37 (Utah 1985). Thus, argues appellant, even if this court agrees with American Reliable's interpretation of the "other insurance" provision in the endorsement, he is entitled to have the case remanded to prove he never received a copy of the endorsement. We disagree.

In his amended complaint, appellant did not set forth any claim that he was entitled to be relieved from the terms of his contract for failure to have received the documents. Quite the contrary, he claimed to be the insured under the policy, claimed the refusal to pay him $3,000 in benefits under the policy was a breach of contract, and characterized his action as one "for benefits due under the terms of the policy." While he purported in a memorandum filed in connection with the cross-motions for summary judgment to "reserve" his right to prove he never received the insurance documents, he never advanced, in an affidavit or in any other manner consistent with Rule 56 of the Utah Rules of Civil Procedure, facts establishing he did not receive the documents. The closest he got to establishing such facts was in answering requests for admission. He was asked to admit that the declaration, policy, and endorsement constituted the contract under which he had brought his claim. He did not so admit, nor did he deny. Instead he offered this non-responsive sentence: "Plaintiff denies having received the documents prior to the loss." Appellant merely signed the response to the requested admissions; he did not do so under oath.

Rule 56(c) identifies the sources which may be looked to in deciding the propriety of summary judgment. Those sources are "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any." *Denials* on file are not included. And because the response was not signed under oath, it cannot qualify as an affidavit or as equivalent to an answer to interrogatories. *See* Utah R.Civ.P. 33(a) (interrogatories must be answered "under oath"); *id.* 56(e) (affidavits "shall set forth such facts as would be admissible in evidence," which requires an oath by reason of Utah R.Evid. 603).

Simply put, defendant's unsworn denial that he received the insurance documents is not adequate under Rule 56 to establish a material dispute of fact concerning his receipt of the documents.

## CONCLUSION

For the foregoing reasons, the trial court's grant of summary judgment to American Reliable is affirmed.

BENCH and BILLINGS, JJ., concur.