**UTAH DEPARTMENT OF TRANSPOR-TATION, Plaintiff and Appellee,**

v.

**ROA GENERAL, INC., a Utah corpora-tion, dba Reagan Outdoor Advertising; YLS Partnership; Craig Smith; Debbie Smith; Hal A. LaFleur; and M. Lorene LaFleur, Defendants and Appellants,**

v.

**SAUNDERS OUTDOOR ADVERTISING, Intervenor and Appellee.**

No. 950565–CA.

Court of Appeals of Utah.

Nov. 7, 1996.

Douglas T. Hall, Salt Lake City, for Appellants.

Ralph L. Finlayson, Salt Lake City, for Appellee Utah Department of Transportation.

Scott W. Holt, Layton, for Appellee Saunders Outdoor Advertising.

Before ORME, BENCH, and WILKINS, JJ.

## OPINION

WILKINS, Judge:

ROA General, Inc. (ROA) appeals the summary judgment entered by the district court in favor of the Utah Department of Transportation (UDOT). ROA alleges mistakes of law and genuine issues of material fact which would preclude summary judgment. We affirm.

## BACKGROUND

In April 1987, YLS Partnership (YLS) submitted a bid to UDOT for a parcel of real property located in Weber County. UDOT ultimately accepted the bid and delivered a quit claim deed to YLS in July 1987. The deed gives a metes-and-bounds description and then declares that the "described tract of land contains 3.36 acres and is granted without access to or from the adjoining freeway [I-15], or 4400 South, or the 134.37 ft. along and contiguous to 1500 West St., over and across the northwesterly, northerly and easterly boundary lines of said tract."

A couple of years later, in November 1989, YLS entered into a lease agreement with ROA, giving ROA permission to build and maintain an outdoor advertising sign on YLS's property adjacent to Interstate 15. Shortly thereafter, on December 4, 1989, YLS applied to UDOT for a permit to construct the billboard.

UDOT granted the sign permit on December 19, 1989. However, the permit contained an express condition: "If the permittee has not resolved or obtained permanent access to this property within 90 days of approval of this permit, the permit will be null and void."

YLS contended that the quit claim deed from UDOT in fact gave YLS access to the property because the metes-and-bounds description in the deed left a gap of at least nineteen feet along 1500 West and because the deed did not describe this gap as being without access. UDOT disputed this reading of the deed and claimed to have sold YLS a landlocked parcel of property. YLS presented no other evidence of permanent access to the property within the ninety days specified in the permit.

Finally, on June 19, 1990, a UDOT officer sent YLS a letter indicating that the sign permit had been revoked as of that date. YLS then filed suit against UDOT in September of that year, seeking to prevent invalidation of the permit.

Because of protracted settlement negotiations, the case never proceeded to trial. In fact, in April 1991, YLS entered into an agreement to purchase access to the south of the parcel with the adjacent landowner, the Howard J. and Janet R. Ellis Revocable Trust (Ellis Trust). Nevertheless, it is unclear from the record before us whether this right of access has ever actually been transferred or deeded to YLS. For purposes of evaluating the propriety of the summary judgment, we assume it was in fact transferred to YLS sometime during or after April 1991, after the expiration of the 1989 permit.

Subsequently, on January 12, 1994, YLS submitted an application to renew its 1989 sign permit. On January 25, 1994, ROA also submitted an application to renew the 1989 YLS permit.

However, on February 1, 1994, before UDOT had acted on the YLS and ROA applications, Saunders Outdoor Advertising applied to UDOT for a permit to erect a billboard on property just south of the YLS property—at a location close enough to the YLS site so as to preclude YLS and ROA from constructing their proposed sign. On February 17, 1994, UDOT issued an order denying both YLS's and ROA's applications to renew the 1989 YLS permit.

ROA and YLS told UDOT they planned to build immediately a billboard on the property, with or without the permit. UDOT then

filed suit against YLS and ROA, seeking to enforce its order denying the permits and to prevent YLS and ROA from erecting a billboard on their proposed site.

The trial court granted summary judgment in favor of UDOT in June 1995. In furtherance of the judgment, the trial court issued a permanent injunction barring anyone from erecting a sign at the proposed YLS location. ROA appeals.

## ANALYSIS

ROA argues UDOT exceeded its authority by imposing the ninety-day time limit and the access requirement when it conditionally granted YLS the sign permit in 1989. ROA further argues that material issues of fact preclude summary judgment and that the evidence shows YLS obtained access to its property through either the quit claim deed from UDOT or through the contract with the Ellis Trust. Finally, ROA argues UDOT should have granted either the YLS or ROA "permit renewal" applications or should have treated them as original applications and granted the permits.

Whenever we consider an appeal from a summary judgment, we review the trial court's legal conclusions, including its conclusion that the material facts are not disputed, for correctness. *See* Utah R.Civ.P. 56(c) (stating that summary judgment is appropriate only if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law"). This standard allows us to make our own conclusions and does not obligate us to defer to the trial court. *See State v. Pena,* 869 P.2d 932, 936 (Utah 1994).

### I. 1989 Sign Permit

■ We first consider whether UDOT has the authority to impose the time limit and the access requirement by which UDOT conditioned YLS's use of the 1989 sign permit. ROA argues that UDOT exceeded the scope of its legal authority by imposing these conditions, and, thus, ROA claims that the original sign permit granted to YLS is still valid.

ROA relies on the Outdoor Advertising Act, codified at Utah Code Ann. §§ 27–12–

136.1 to –136.13 (1995), for the proposition that UDOT may not promulgate regulations more restrictive than the Outdoor Advertising Act, and argues that the imposed conditions are more restrictive. *See id.* § 27–12–136.6. We agree in part.

■ Section 27–12–136.7(2)(a) of the Utah Code expressly provides that "each permit issued by the department expires on June 30 of each year." *Id.* § 27–12–136.7(2)(a) (1995). Any attempt by UDOT to impose a different expiration on permits contradicts the statute and is of no effect. *IML Freight, Inc. v. Ottosen,* 538 P.2d 296, 297 (Utah 1975) (holding agency may not " 'adopt rules or regulations which abridge, enlarge, extend or modify the statute' " (quoting State ex rel. *McCulloch v. Ashby,* 73 N.M. 267, 387 P.2d 588, 590 (1963))); *McKnight v. State Land Bd.,* 14 Utah 2d 238, 244–45, 381 P.2d 726, 730 (1963) (holding administrative agency may not promulgate rules and regulations, or take action contrary to or in excess of statutory law). In *Crowther v. Nationwide Mutual Insurance Co.,* 762 P.2d 1119 (Utah App. 1988), this court held that an agency may not take actions in " 'conflict with the design of an Act, and when they do the court has a duty to invalidate them .... Furthermore, when an administrative official misconstrues a statute and issues a regulation beyond the scope of a statute, it is in excess of administrative authority granted.' " *Id.* at 1122 (quoting *Travelers Indem. Co. v. Barnes,* 191 Colo. 278, 552 P.2d 300, 303 (1976)).

However, we conclude that UDOT did not exceed its authority by requiring YLS to obtain access to its property before allowing construction of a sign at the location. Otherwise, UDOT would have been giving implicit approval for YLS to enter through the adjacent landowner's property to construct the sign. Entering property which has no legal access would require either trespassing or, in this case, the possible use of means which violate safety concerns.

■ To access its property, YLS would have had to trespass on neighboring land, which would be illegal. The State certainly has inherent authority to identify an existing requirement of law and make it a condition to

the granting of a permit or license. The application of an existing requirement of the law is not equivalent to imposing new conditions not otherwise required by law. Furthermore, UDOT was on notice of the access problems since UDOT deeded the property "without access" to YLS. In fact, UDOT created the difficulty in access for purposes it believed to be in the interests of public safety. UDOT was especially concerned about access directly from the interstate highway to the property. In such a situation, UDOT has the authority to require legal access as a condition to building a sign on the property. UDOT undisputedly has "the general responsibility for ... safety of state transportation systems." Utah Code Ann. § 63-49-4(1) (Supp.1996). UDOT therefore could require YLS to demonstrate that YLS had acquired a means of safe and lawful access to the property as a condition to the sign permit.

Had UDOT not sent the letter in mid-June 1990, declaring the permit null and void for failure to establish legal access to the property within the impermissible ninety-day time period, the permit simply would have expired according to law on June 30, 1990. However, having received the ill-conceived letter from UDOT, YLS could not reasonably have been expected to ignore the letter and seek renewal of the permit anyway. Were we to rely on the automatic expiration of the 1989 permit on June 30, 1990 alone, we would allow an injustice to be done. However, the condition imposed by UDOT that YLS demonstrate legal access to the property was proper, and serves as ROA's downfall.

## II. Access to the YLS Property

ROA claims that YLS did acquire access to the property by virtue of the quit claim deed from UDOT. If a deed is unambiguous, the courts will, as a matter of law, determine the intent of the parties from the express language of the deed itself. *See Hancock v. Planned Dev. Corp.*, 791 P.2d 183, 185 (Utah 1990).

The quit claim deed from UDOT to YLS provided that the property "is granted without access to or from the adjoining freeway, or 4400 South, or the 134.37 ft. along and contiguous to 1500 West St., over and across the northwesterly, northerly and easterly boundary lines of said tract." ROA claims that the deed only prohibits access along 134.37 feet of the property's eastern boundary, while the actual length of the property along the east side is closer to 155 feet. ROA argues that this "gap" in the property description can only mean that access was granted along this twenty feet. The description of the property conveyed, however, is identical to the description of the limitation contained in the deed. For ROA's argument to be successful, we would have to accept the notion that the parcel's description was simply an error (since it does not describe a closed parcel), and the description of the access restriction was clearly intended (leaving a twenty-foot access corridor), even though the words used for each are identical. This is an unreasonable interpretation of the deed. The plain intent of the deed was to convey a closed parcel, without access on the northwesterly, northerly, and easterly boundaries. The deed is not ambiguous on this point.

The deed does not expressly establish access anywhere on the property, and does expressly state that the property "is granted without access ... across the northwesterly, northerly *and easterly* boundary lines of said tract." (Emphasis added.)

ROA argues that the claimed ambiguity about the "gap" at least creates a genuine issue of material fact requiring the use of extraneous evidence to determine the parties' intent and requiring a trial on the issue. Even if we were to accept the claim that the descriptions of the deed create an ambiguity, to place such a material fact in dispute, YLS and ROA were required under Rule 56 of the Utah Rules of Civil Procedure to present some sworn evidence of this position. Nevertheless, neither has provided an affidavit or other evidence by which a trier of fact could find that UDOT intended to sell the property to YLS with access. The only evidence concerning the intent of UDOT, the grantor, was that UDOT advertised the property in the newspaper as being landlocked, that UDOT accepted the lower of two bids from YLS—which bid was to purchase the property without access—and that UDOT considered ac-

cess along 1500 West to be unsafe. ROA has not provided any evidence to dispute a finding that UDOT intended to convey the property to YLS without access.

We thus conclude, as a matter of law, that YLS did not acquire a right of access to the property by virtue of the quit claim deed. Accordingly, YLS failed to acquire means for safe and lawful access to the property before the June 30, 1990 expiration of the permit. Therefore, the 1989 permit expired on June 30, 1990, and is no longer valid. Had YLS known of the error in the pronouncement of the June 19, 1990 letter from UDOT, an application to renew the 1989 permit would still have been of no use.

### III.  1994 Permit Applications

■  ROA now seeks to have the 1994 permit applications treated as applications for new permits. However, in January 1994, both YLS and ROA submitted applications to UDOT seeking to renew the original 1989 sign permit. When YLS and ROA presented applications expressly described as intending to renew the long-expired 1989 permit, UDOT was clearly at liberty to take the applicants at their word. UDOT was not obligated to guess that at some future time ROA would prefer the applications to have been treated as new, original permit applications. As a result, UDOT properly denied the renewal applications under the circumstances.

■  Even if we accept ROA's argument that the applications should have been treated as original permit applications instead of as renewal applications, and that the statutorily required fee was effectively tendered, YLS and ROA still failed to exhaust their administrative remedies in appealing the UDOT order denying the permits. "Before [ROA] could claim on appeal that UDOT erred in denying the permits, UDOT should have had the opportunity to correct the alleged error." *Kunz & Co. v. State,* 913 P.2d 765, 770 (Utah App.1996). "Because [ROA] did not exhaust its administrative remedies with regard to the sign permits, neither the trial court nor this court has jurisdiction to reverse, alter, or otherwise circumvent that particular agency action." *Id.* at 771.

### CONCLUSION

UDOT exceeded the scope of its legal authority when it attempted to impose a time limitation on the permit different from that established by statute. However, UDOT acted within the scope of its legal authority when it imposed the requirement of lawful access as a condition to YLS's 1989 sign permit. As a matter of law, YLS did not obtain lawful access to the property under the terms of the quit claim deed from UDOT. Accordingly, YLS failed to acquire safe and lawful access to the property before the permit expired according to law. The 1989 sign permit expired accordingly on June 30, 1990 and has no further force or effect.

ROA did not exhaust its administrative remedies regarding UDOT's denial of its 1994 permit applications. Accordingly, we have no jurisdiction to disturb that order.

We therefore affirm the trial court's order of summary judgment.

ORME, P.J., and BENCH, J., concur.