# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: **MAY 1, 2017**

**NO. 34,432**

**THOMAS and LESLIE HAMMACK,**

Protestants-Appellants,

v.

**NEW MEXICO TAXATION AND
REVENUE DEPARTMENT,**

Respondent-Appellee.

**APPEAL FROM TAXATION AND REVENUE DEPARTMENT
Monica Ontiveros, Hearing Officer**

Betzer, Roybal & Eisenberg, P.C.
Gary D. Eisenberg
Albuquerque, NM

for Appellants

Hector H. Balderas, Attorney General
Elena Romero Morgan, Special Assistant Attorney General
Santa Fe, NM

for Appellee

**OPINION**

**ZAMORA, Judge.**

{1} Thomas and Leslie Hammack (collectively, Taxpayers) appeal from the decision and order of the hearing officer affirming the New Mexico Taxation and Revenue Department's (the Department) assessment of unpaid personal income tax and interest for tax years 2009-2010, and unpaid personal income tax, penalties, and interest for tax years 2011-2012. The sole issue on appeal is whether the hearing officer correctly determined that Mr. Hammack's service in the United States Public Health Service (USPHS) was not active duty service in the armed forces of the United States (armed forces), within the meaning of NMSA 1978, Section 7-2-5.11 (2007). *See* § 7-2-5.11 ("A salary paid by the United States to a taxpayer for active duty service in the armed forces of the United States is exempt from state income taxation."). Having considered Taxpayers' arguments raised on appeal and concluding that the hearing officer's decision and order is supported by substantial evidence, we affirm.

**BACKGROUND**

{2} For the tax years 2009-2012, Mr. Hammack was employed as an active duty commissioned officer for USPHS. During that period of time Mr. Hammack was a New Mexico resident and his regular place of employment for USPHS was in

Arizona. For tax years 2009-2012, Taxpayers filed New Mexico personal income tax returns. Taxpayers were married and filed jointly for those tax years. On their joint returns, Taxpayers claimed an exemption for Mr. Hammack's wages and omitted his wages from their joint returns.

{3} On January 3, 2014, the Department issued two notices of assessment for unpaid personal income tax and interest for tax years 2010 and 2011. On January 10, 2014, the Department issued two notices of assessment for unpaid personal income tax, penalties, and interest for tax years 2011 and 2012. On May 7, 2014, the Department issued one notice of assessment for unpaid personal income tax, penalties, and interest for tax year 2009.

{4} Taxpayers timely filed a written protest to the assessments, asserting that Mr. Hammack's wages were exempt from New Mexico income tax under the armed forces salaries exemption. Taxpayers claimed that when Mr. Hammack contacted the Department in 2009 a Department employee confirmed that his wages were exempt. Taxpayers' protest was heard by a Department hearing officer on December 10, 2014.

{5} After the hearing, the hearing officer entered a decision and order concluding that Mr. Hammack was not in the armed forces for tax years 2009-2012, and therefore did not qualify for the armed forces salaries exemption. The hearing officer reversed the Department's penalty assessment for tax year 2009 since the Department

2

mistakenly issued a refund for that year allowing the exemption. The Department's remaining assessments of unpaid personal income tax and interest for tax years 2009-2010, and unpaid personal income tax, penalties, and interest for tax years 2011-2012, were affirmed. This appeal followed.

**DISCUSSION**

{6}     On appeal, this Court shall set aside a decision and order of the hearing officer only if it is "(1) arbitrary, capricious, or an abuse of discretion; (2) not supported by substantial evidence in the record; or (3) otherwise not in accordance with the law." NMSA 1978, § 7-1-25(C) (2015); *Holt v. N.M. Dep't of Taxation & Revenue*, 2002-NMSC-034, ¶ 4, 133 N.M. 11, 59 P.3d 491.

{7}     To determine whether Mr. Hammack's wages from the USPHS were exempt from state income taxes, pursuant to Section 7-2-5.11, we must interpret the relevant statute, which is a question of law that we review de novo. *See Schuster v. N.M. Dep't of Taxation & Revenue*, 2012-NMSC-025, ¶ 9, 283 P.3d 288. "Where an exemption or deduction from tax is claimed, the statute must be construed strictly in favor of the taxing authority, the right to the exemption or deduction must be clearly and unambiguously expressed in the statute, and the right must be clearly established by the taxpayer." *Sec. Escrow Corp. v. N.M. Taxation & Revenue Dep't*, 1988-NMCA-068, ¶ 8, 107 N.M. 540, 760 P.2d 1306; *see also Reed v. Jones*,

1970-NMCA-050, ¶ 9, 81 N.M. 481, 468 P.2d 882 (noting that taxpayer did not clearly establish a right to the deduction because, if the statute clearly and unambiguously authorized the deduction, the court would not have had to construe the phrase, "initial use"). "Thus, taxation is the rule and the claimant[s] for an exemption must show that [their] demand is within the letter as well as the spirit of the law." *Sec. Escrow Corp.*, 1988-NMCA-069, ¶ 10.

{8}     Section 7-2-5.11 exempts salaries "paid by the United States to a taxpayer for active duty service in the armed forces of the United States . . . from state income taxation." Taxpayers argue that they are eligible for the exemption because Mr. Hammack's service, as a commissioned officer of the USPHS, is considered active military service in the armed forces of the United States under federal law. We are unpersuaded.

{9}     The Surgeon General administers the USPHS under the supervision and direction of the Secretary of Health and Human Services. 42 U.S.C. § 202 (2012). The USPHS maintains a Regular Corps and a Ready Reserve Corps, both of which consist of commissioned officers. 42 U.S.C. § 204 (2012). The commissioned corps of the USPHS are part of the United States' "uniformed services." *See* 10 U.S.C. § 101(a)(5) (2012) ("The term 'uniformed services' means—(A) the armed forces; (B) the commissioned corps of the National Oceanic and Atmospheric Administration; and

4

(C) the commissioned corps of the [USPHS]."). In times of war or emergency involving national defense, the president may declare the commissioned corps of the USPHS to be a military service. *See* 42 U.S.C. § 217 (2012). Commissioned officers of the USPHS can be detailed for duty with other government departments including the armed forces. *See* 42 U.S.C. § 215(a) (2012). In some limited circumstances, they are entitled to the same rights, privileges, immunities, and benefits as members of the armed forces. *See* 42 U.S.C. § 213(a), (d), (e), (f) (2012).

{10}    Taxpayers suggest that because Mr. Hammack's service in the USPHS is considered active military service under 42 U.S.C. § 213(e) and 50 App. U.S.C. §§ 511(1), (2) (2012), and 50 App. U.S.C. § 571(b) (2012) of the Servicemembers Civil Relief Act (SCRA), which are now codified as 50 U.S.C. § 3911(1), (2) (2015), and 50 U.S.C. § 4001 (2015)[1], it should also be considered active military service under Section 7-2-5.11. This argument is unavailing.

{11}    Under 42 U.S.C. § 213(e), the "[a]ctive service of commissioned officers of the [USPHS] shall be deemed to be active military service in the Armed Forces of the United States for the purposes of all rights, privileges, immunities, and benefits now or hereafter provided under the [SCRA]." Likewise, "military service" is defined within the SCRA to include the active service of commissioned officers of the

---

[1]The SCRA was previously codified at 50 App. U.S.C. §§ 501-597(b) (2012, current version at 50 U.S.C. §§ 3901-4043 (2015)).

5

USPHS. 50 U.S.C. § 3911(2)(B). However, these federal statutes on which Taxpayers rely apply only in the context of the SCRA. *See* 42 U.S.C. § 213(e) (deeming USPHS officer service as military service "*for the purposes of all rights, privileges, immunities, and benefits now or hereafter provided under the* [*SCRA*]" (emphasis added)); *see also* 50 U.S.C. § 3911 (defining "military service" for the purposes of Chapter 50–SCRA only). By specifically granting USPHS officers the same status of officers in the armed forces in only limited circumstances and for only limited purposes, Congress has recognized that USPHS officers are not regularly considered to be officers in the armed forces. *Cf. Hedin v. Thompson*, 355 F.3d 746, 749-50 (4th Cir. 2004) (discussing fact that, if active duty in USPHS was the same as active duty in the armed forces, there would be no reason for Section 213(f)). We do not agree that the SCRA, which is limited in scope and application, indicates that USPHS officers are considered members of the armed forces by the federal government, or should be considered such for purposes of Section 7-2-5.11.

{12}     Section 7-2-5.11 also does not support Taxpayers' argument. In construing our statutes, this Court "will not read into a statute . . . language which is not there, particularly if it makes sense as written." *Johnson v. N.M. Oil Conservation Comm'n*, 1999-NMSC-021, ¶ 27, 127 N.M. 120, 978 P.2d 327 (internal quotation marks and citation omitted). Section 7-2-5.11 states that "[a] salary paid by the United States to

6

a taxpayer for active duty service in the armed forces of the United States is exempt from state income taxation." To the extent that Taxpayers argue that the New Mexico Legislature intended to include commissioned officers of the USPHS within the term "armed forces" in Section 7-2-5.11, we are not persuaded. Although "armed forces" is not defined in the New Mexico tax code, the statutory provision allowing for tuition for veterans defines "armed forces" as "the United States army, navy, air force, marine corps or coast guard." NMSA 1978, § 21-1-4.5(I) (2016). Likewise, the federal government, which governs the armed forces, has defined "armed forces" in Title 10—Armed Forces, as "the [a]rmy, [n]avy, [a]ir [f]orce, [m]arine [c]orps, and [c]oast [g]uard." 10 U.S.C. § 101(a)(4) (2012). Neither of these definitions includes commissioned officers of the USPHS. Given the federal government's classification of USPHS officers vis a vis the armed forces, as well as New Mexico's consistent definition of armed forces in Section 21-1-4.5(I), we cannot agree with Taxpayers that the New Mexico Legislature intended to include commissioned officers of the USPHS within the term "armed forces" in Section 7-2-5.11.

{13}     Nor do we agree that regulations adopted by the Department support Taxpayers' position. The regulations governing personal income taxes and residency define "armed forces" to include "all members of the army of the United States, the United States navy, the marine corps, the air force, the coast guard, all officers of the

7

[USPHS] detailed by proper authority for duty either with the army or the navy, reservists placed on active duty, and members of the national guard called to active federal duty." 3.3.1.9(D)(5) NMAC (12/15/10). Taxpayers rely on *State ex rel. McCulloch v. Ashby*, 1963-NMSC-217, ¶ 17, 73 N.M. 267, 387 P.2d 588, for the proposition that the definition of "armed forces" in 3.3.1.9(D)(5) NMAC improperly modifies the exemption set forth in Section 7-2-5.11. Such reliance is misplaced.

{14} In *McCulloch*, the Court held that a regulation adopted by the Department that created an exemption not contemplated by the exemption statute, or included within the exemption specified within the statute, was void. 1963-NMSC-217, ¶¶ 12, 17. In this case, the regulation defines the term "armed forces," which appears in the statute but is not defined therein. *See* Section 7-2-5.11 ("A salary paid by the United States to a taxpayer for active duty service in the armed forces of the United States is exempt from state income taxation."). In *McCulloch*, it was explained that "the [L]egislature may not delegate authority to a board or commission to adopt rules or regulations which abridge, enlarge, extend or modify the statute creating the right or imposing the duty." 1963-NMSC-217, ¶ 17. However, in 3.3.1.9(D)(5) NMAC, the Department simply defines "armed forces." The definition does not modify the statute.

{15} Taxpayers also contend that the Department's regulation 3.3.1.9(D)(1)-(5) NMAC was enacted to ensure that New Mexico military residence tax law complied

with federal law, and that 3.3.1.9(D)(5) NMAC should therefore be read consistently with the SCRA, which defines military service to include the service of commissioned officers of the USPHS. *See* 50 U.S.C. § 3911 (defining "servicemember" as "a member of the uniformed services," and defining "military service" to include the active service of commissioned officers of the USPHS).

{16}     We reject Taxpayers' assertion that the Department's regulations were enacted to ensure that New Mexico military residence tax law complied with federal law. The purpose of the Department's regulations is "to interpret, exemplify, implement and enforce the provisions of [New Mexico's] Income Tax Act." 3.3.1.6 NMAC (12/14/00); *see* NMSA 1978, § 9-11-6.2(A) (2015) (authorizing the Department to issue all regulations "necessary to implement and enforce any provision of any law the administration and enforcement of which the department, the secretary, any division of the department or any director of any division of the department is charged"). And as we previously discussed, the definitions in 50 U.S.C. § 3911 are provided for the purposes of the SCRA and do not assist in our interpretation of Section 7-2-5.11.

{17}     Finally, Taxpayers argue that the Department already recognizes Mr. Hammack as a member of the armed forces because New Mexico income tax is withheld from his USPHS wages earned out of state. Taxpayers rely on 5 U.S.C. § 5517(a) (2012),

which provides for withholding of state income tax from a federal employee's wages where (1) an employee is subject to the tax and the employee's place of federal employment is within the state, or (2) where the employee is a resident of the state and a member of the armed forces. Taxpayers contend that USPHS could not have withheld New Mexico income tax from Mr. Hammack's compensation under the first option, since Mr. Hammack's place of employment was not in New Mexico. Therefore, Taxpayers argue that the USPHS must have withheld New Mexico income tax under the second option for members of the armed forces. We are not persuaded.

{18}     Under 5 U.S.C. § 5517(a), the head of each agency of the United States is required to comply with a state's income tax withholding statute "in the case of employees of the agency who are subject to the tax and whose regular place of [f]ederal employment is within the [s]tate with which the agreement is made" and "[i]n the case of pay for service as a member of the armed forces . . . who are residents of the [s]tate." (internal quotation marks omitted). The term "service as a member of the armed forces," for the purposes of 5 U.S.C. § 5517, includes the participation in required drills and field exercises by a member of the National Guard under 32 U.S.C. § 502 (2012), and the participation in scheduled drills or training periods, or service on active duty for training by a member of the Armed Forces Ready Reserve under 10 U.S.C. § 10147 (2012). *See* 5 U.S.C. § 5517(d)(1), (2); 10

U.S.C. § 10101 (2012) (stating that reserve components include the army national guard, the army reserve, the navy reserve, the marine corps reserve, the air national guard, the air force reserve, and the coast guard reserve). It does not include service by a commissioned officer of the USPHS. *See* 5 U.S.C. § 5517(d)(1), (2).

{19}     Mr. Hammack's regular place of federal employment was not within New Mexico, and Mr. Hammack's employment is not considered "service as a member of the armed forces" for the purposes of 5 U.S.C. § 5517. Thus, 5 U.S.C. § 5517 did not require that the USPHS withhold New Mexico income tax from Mr. Hammack's compensation. If USPHS withheld New Mexico income tax despite the fact that it was not required to under 5 U.S.C. § 5517, there is no indication in the record that it did so because the Department considered Mr. Hammack to be a member of the armed forces.

**CONCLUSION**

{20}     Because Taxpayers have not clearly and unambiguously established their right to the exemption in question, we affirm the hearing officer's decision and order.

{21}     **IT IS SO ORDERED.**

_____

**M. MONICA ZAMORA, Judge**

**I CONCUR:**

_____

**JAMES J. WECHSLER, Judge**

**TIMOTHY L. GARCIA, Judge (dissenting)**.

**GARCIA, Judge (dissenting).**

{22}    I respectfully dissent in this case. Our rules of statutory construction can appropriately be applied to Section 7-2-5.11 and, in doing so, the undefined term "active duty service in the armed forces of the United States" would include all active duty service members in the USPHS who are detailed for active duty with the armed forces, not just two specific branches of the armed forces, the army and the navy. Because issues of statutory construction involve a legal determination, we are not required to give any deference or discretion to a hearing officer's ruling on this issue of law. *See Bank of N.Y. v. Romero*, 2014-NMSC-007, ¶ 40, 320 P.3d 1 ("Statutory interpretation is a question of law, which [appellate courts] review de novo" (internal quotation marks and citation omitted)); *T-N-T Taxi, Ltd. v. N.M. Pub. Reg. Comm'n*, 2006-NMSC-016, ¶ 5, 139 N.M. 550, 135 P.3d 814 ("When an administrative agency determines legislative intent[, appellate courts shall] review de novo."); *Truong v. Allstate Ins. Co.*, 2010-NMSC-009, ¶ 27, 147 N.M. 583, 227 P.3d 73 ("[Our appellate courts] review these questions of law de novo, without deference to the [lower] court's legal conclusions." (internal quotation marks and citation omitted)). Applying our de novo standard of review to the term "active duty service in the armed forces of the United States," I conclude that, if Mr. Hammack's service in the USPHS was based upon being detailed for active duty with any branch of the armed forces of the

13

United States, then he qualified for the exemption from state income tax pursuant to Section 7-2-5.11, regardless of which branch of the United States military he was detailed with for his service.

{23}   I begin my analysis by clarifying one of the issues that does not need to be resolved under Section 7-2-5.11. Although the majority opinion determines that Mr. Hammack's service in the USPHS "was not active duty service in the armed forces of the United States," it agrees that he was on "active duty" service with the USPHS during the tax periods at issue. Majority Opinion ¶¶ 1-2. The only disputed legal issue is whether Mr. Hammack's "active duty" service in the USPHS qualified as "service in the armed forces of the United States." Majority Opinion ¶¶ 9-20.

{24}   The majority also failed to provide a historical analysis and factual perspective regarding the development of the USPHS over time. Majority Opinion ¶ 9. It simply summarized the current status of the USPHS under federal law. *Id.* Taxpayers provided a historical and factual analysis in their brief in chief, but it is lengthy and I am not compelled to repeat it in detail as part of this dissent. In summary, Taxpayers explained how the services of various scientific professions—primarily physicians, dentists, nurses, engineers and scientists—that work within the armed service communities became part of the current active duty military that is now identified as the USPHS and is presently codified and governed by the SCRA. The active duty

14

military service by USPHS officers is not limited to select branches of the military in the SCRA, specifically the army and navy as designated by the Department in its regulation. *See* 3.3.1.9(D)(5) NMAC. The Department neither disputes this historical analysis of how the present day USPHS was legislatively developed by Congress for more than a century nor challenges its vital role within the entire United States military defense system. As a result, the accuracy of Taxpayers' historical analysis and factual summary regarding the development of the USPHS does not appear to be in dispute. *See Lasley v. Baca*, 1981-NMSC-041, ¶ 1, 95 N.M. 791, 626 P.2d 1288 (recognizing that the appellate courts will accept, as undisputed, the statement of the applicable facts "fully and clearly set forth in appellant's brief in chief and not objected to in [the] appellee's answer brief").

{25}     With this understanding and summarization of the historic development of the USPHS and its vital role in the country's military defense system, I turn to the critical issue in this case, whether the Legislature intended to exclude some military branches of the armed forces that an active duty member of the USPHS is detailed to serve with, thereby excluding certain USPHS officers from qualifying as a service member of the "armed forces of the United States" under Section 7-2-5.11. The majority determined that this statutory phrase—service in the armed forces of the United States—was not "intended by the Legislature "to include [a] commissioned officer

of the USPHS within the term 'armed forces' in Section 7-2-5.11." *See* Majority Opinion ¶ 12. For statutory construction purposes, the phrase—service in the armed forces of the United States—is ambiguous in Section 7-2-5.11 and requires further analysis. I do not agree with the majority regarding its interpretation of Section 7-2-5.11, particularly any assertion that the Legislature intended to totally exclude USPHS officers from the term "armed forces" in Section 7-2-5.11.

{26}    I start with the basic presumption that the Legislature "knows the law and acts rationally" when statutes are enacted. *Bybee v. City of Albuquerque*, 1995-NMCA-061, ¶ 11, 120 N.M. 17, 896 P.2d 1164; *see Kmart Corp. v. N.M. Taxation & Revenue Dep't*, 2006-NMSC-006, ¶ 15, 139 N.M. 172, 131 P.3d 22 ("[The appellate courts] presume that the Legislature knows the state of the law when it enacts legislation[.]"). In Taxpayers' case, this "knowledge of the law" presumption would apply to the statutory definition of "armed forces" in Section 7-2-5.11. In 2005, when the Legislature enacted Section 21-1-4.5 to provide tuition deductions for members of the armed forces, it provided a specific statutory definition for "armed forces." *See* § 21-1-4.5(F) (2005, amended 2016) (defining armed forces as "the United States army, navy, air force, marine corps[,] or coast guard"). In 2007, the Legislature chose not to use a statutory definition for "armed forces" derived from Section 21-1-4.5(F), or any other source, when it enacted Section 7-2-5.11. Without the benefit of legislative

16

history, this Court can only surmise that the Legislature was fully aware of the definition it used for armed forces in Section 21-1-4.5 and intentionally chose not to define any particular branches of the armed forces when it enacted Section 7-2-5.11. *See Bybee*, 1995-NMCA-061, ¶ 11 (noting that an appellate court will surmise that the Legislature can provide some waivers of immunity for some types of public systems and not others, even where it may seem contradictory); *see also Hi-Country Buick GMC, Inc. v. N.M. Taxation & Revenue Dep't.*, 2016-NMCA-027, ¶ 21, 367 P.3d 862 (recognizing that the Legislature can intend to define the same term in separate statutes differently because it is presumed to be aware and informed regarding existing laws at the time a statute is enacted). As a result, the lack of a definition for "armed forces" in Section 7-2-5.11 renders the term unclear, ambiguous, and requires further interpretation by this Court. *See State ex rel. Cisneros v. Martinez*, 2015-NMSC-001, ¶¶ 25-26, 340 P.3d 597 (recognizing that where the Legislature's intent is not "so easy to discern from [the statute or] . . . is unclear, ambiguous, or reasonably subject to multiple interpretations," our appellate courts look to other indicators and rules of statutory construction to determine legislative intent (internal quotation marks and citation omitted)).

{27}     Based upon the multiple definitions and interpretations of "armed forces" actually cited and relied upon by the majority, *see* Majority Opinion ¶¶ 12-13, it

would be error to conclude that the meaning of "service in the armed forces of the United States" is clearly stated in Section 7-2-5.11. This ambiguity is also apparent, and impossible to reconcile based upon the Department's use of a strikingly different definition of "armed forces" when it issued its regulation. *See* 3.3.1.9(D)(5) NMAC (specifying that "armed forces means all members of the army of the United States, the United States navy, the marine corps, the air force, the coast guard, all officers of the [USPHS] detailed by proper authority for duty either with the army or the navy, reservists placed on active duty, and members of the national guard called to active federal duty"). As a result, the undefined term "service in the armed forces of the United States" set forth in Section 7-2-5.11 is ambiguous and requires further interpretation by this Court. *See Wilson v. Denver*, 1998-NMSC-016, ¶ 36, 125 N.M. 308, 961 P.2d 153 ("In order to discern the intent of the Legislature when interpreting an ambiguous statute, we resort to [the] well-accepted rules of statutory construction[.]").

{28}     The first basic rule of statutory construction instructs us to "select the rationale that most likely accomplishes the legislative purpose—or best fills a void not addressed by the Legislature." *Id.* (internal quotation marks and citation omitted). In many situations, our appellate courts start by using a dictionary definition to ascertain the ordinary meaning of words that form the basis of a statutory interpretation

inquiry. *See N.M. Atty. Gen. v. N.M. Pub. Regulation Comm'n.*, 2013-NMSC-042, ¶ 26, 309 P.3d 89 ("Under the rules of statutory construction, we first turn to the plain meaning of the words at issue, often using the dictionary for guidance."). I hesitate to utilize this method of statutory construction for four reasons. First, the majority did not venture to define the plain meaning of the term "service in the armed forces" by reference to any definitions from the dictionary. *See* Majority Opinion ¶¶ 9-14. Second, neither party has suggested in the briefing that we define the requisite statutory language by utilizing any definitions from the dictionary. *See TPL, Inc. v. N.M. Taxation & Revenue Dep't*, 2000-NMCA-083, ¶¶ 11-13, 129 N.M. 539, 10 P.3d 863 (addressing the issue of statutory construction where both parties offered dictionary definitions for the statutory term in dispute but the two definitions were not identical and would create different outcomes in the dispute), *rev'd on other grounds*, 2003-NMSC-007, 133 N.M. 447, 64 P.3d 474. Third, the Department's definition in 3.3.1.9(D)(5) NMAC was not represented to be based upon any definitions from the dictionary. Finally, the military service at issue arises under federal law and this tax exemption statute involves a financial incentive for our state's residents who serve in the military. *See* § 7-2-5.11. As a result, utilizing a dictionary based method of statutory construction does not appear to be the best method for this Court to apply in the present case. Several other rules of statutory construction can be applied both

individually and collectively to provide a definition for "service in the armed forces of the United States."

{29} One helpful principle of statutory construction recognizes that "[w]hen the [L]egislature does not provide an express definition of an essential statutory term, it must be assumed that the [L]egislature was aware of the construction given that term in the judicial decisions of other jurisdictions." *Sunwest Bank of Albuquerque v. Nelson*, 1998-NMSC-012, ¶ 16, 125 N.M. 170, 958 P.2d 740 (internal quotation marks and citation omitted). In *Sunwest Bank of Albuquerque*, our Supreme Court interpreted the New Mexico statute consistently with the federal statute because this is the type of persuasive "extrinsic aid deserving special attention in the process of [statutory] interpretation."). *Id.* (internal quotation marks and citation omitted). In the present case, the related federal statute is the SCRA, and it deems commissioned officers of the USPHS that are detailed for service with any branch of the armed forces to be included within "active military service of . . . the [a]rmed [f]orces of the United States." 42 U.S.C. § 213(e). The Department agrees that USPHS officers meet the definition for "active duty service in the armed forces of the United States," but only included those USPHS officers' detailed for active duty in the army or navy. *See* 3.3.1.9(D)(5) NMAC; *see also* § 7-2-5.11. In addition, a federal court has determined that USPHS officers detailed for active duty with any branch of the armed forces are

recognized to be identical to commissioned officers in the armed forces of the United States. *See Wanner v. Glen Ellen Corp.*, 373 F. Supp. 983, 985-86 (D. Vt. 1974) (stating "[i]t appears that the intent of Congress in amending [S]ection 213(a) of [the USPHS Act] was to grant [USPHS] officers on detail with the [a]rmed [f]orces the identical federal rights available to commissioned [a]rmy officers[, t]hus, . . . officers on detail with the [c]oast [g]uard by altering the phrase 'members of the [a]rmy' in that section to include persons occupying [the] plaintiff's status [with the coast guard]").

{30} In addition to looking at the related federal statute, another recognized rule of statutory construction is known as "ejusdem generis." *See State v. Office of the Pub. Def. ex rel. Muqqddin*, 2012-NMSC-029, ¶ 29, 285 P.3d 622 (recognizing that where general words follow words of a more specific meaning, the general words are "construed as applying to persons or things of the same kind or class as those specifically mentioned" (internal quotation marks and citation omitted)). The same rule has been applied in many jurisdictions "[w]here the opposite sequence is found," specific words followed by the general words. *State v. Strauch*, 2014-NMCA-020, ¶ 13, 317 P.3d 878 (internal quotation marks and citation omitted), *rev'd on other grounds*, 2015-NMSC-009, 345 P.3d 317. "The rule of *ejusdem generis*, while firmly established, is only an instrumentality for ascertaining the correct meaning of words

when there is uncertainty . . . but it may not be used to defeat the obvious purpose of legislation." *State v. Johnson*, 2009-NMSC-049, ¶ 20, 147 N.M. 177, 218 P.3d 863 (emphasis added) (internal quotation marks and citation omitted). Here the general words "armed forces" followed by words of a more specific meaning, "of the United States," reasonably limit the general words "armed forces" to those members recognized by the federal government to be serving in the United States military. Applying the principle of *ejusdem generis* allows the term "service in the armed forces of the United States" to recognize all the inter-related branches of service in the United States military. In the present case, a proper reading of "service in the armed forces of the United States" would also include USPHS officers detailed for active duty with any of the branches of the military of the United States.

{31}     Continuing with this type of analysis, our appellate courts also consider analyzing a "statute's function within a comprehensive legislative scheme." *See T-N-T Taxi*, 2006-NMSC-016, ¶ 5. In the present case, I find little distinction between the statutory function and the statutory purpose of Section 7-2-5.11. Both the purpose and function of this statute is to allow a tax exemption to all active duty service members detailed with the military branches of the armed forces of the United States, as long as they are considered residents of the State of New Mexico. The words used by the

Legislature provide no limitation or distinguishment that would narrow this statutory purpose or function.

{32} Finally, when the Legislature specifically narrows a statutory term in one instance, it is reasonable to use the process of negative inference to assume the absence of a definition or other specificity in another analogous statute is intentional. *See Levario v. Ysidro Villareal Labor Agency*, 1995-NMCA-133, ¶¶ 11-12, 120 N.M. 734, 906 P.2d 266 (applying the process of negative inference to assist in interpreting undefined words in a statute and to give them ordinary and common meanings rather than a narrow definition); *State v. Lucero*, 1992-NMCA-103, ¶ 6, 114 N.M. 460, 840 P.2d 607 (recognizing how the process of negative inference is applied to similar provisions in statutes and court rules); *see also Patterson v. Globe Am. Cas. Co.*, 1984-NMCA-076, ¶ 10, 101 N.M. 541, 685 P.2d 396 (recognizing that "the Legislature knows how to create a private remedy if it intends to do so [and b]y negative inference, the Legislature's failure to provide for a private action suggests that it did not intend to create one"), *superseded by statute on other grounds as stated in Journal Publ'g Co. v. Am. Home Assurance Co.*, 771 F. Supp. 632, 635 (S.D.N.Y. 1991). Under this principle of statutory construction, it would be illogical and improper to provide a more narrow definition for "armed forces" in Section 7-2-5.11 than the specific definition provided by the Legislature under Section 21-1-4.5. Based

23

on a consistent application of these rules of statutory construction, "armed forces of the United States" in Section 7-2-5.11 should properly be interpreted to include all active duty members of the USPHS detailed for duty with any of the military branch of the armed forces of the United States. According to the Department's own broad determination of the active duty military branches of the armed forces in 3.3.1.9(D)(5) NMAC, this would include USPHS officers detailed for active duty with the army, navy, air force, marine corp, coast guard, the reserve corp placed on active duty, and the national guard placed on active federal duty. As a result, any of Mr. Hammack's active duty service within the USPHS that involved being detailed with any of these military branches of the armed forces of the United States would qualify him as providing "service within the armed forces of the United States" pursuant to Section 7-2-5.11.

{33} Recognizing that the rules of statutory construction support a broader and more inclusion definition of "service in the armed forces of the United States," I now turn to the Department's more narrow definition in 3.3.1.9(D)(5) NMAC. This regulation limits the definition of "active duty service in the armed forces of the United States" to "all officers of the [USPHS] detailed by proper authority for duty either with the army or the navy[.]" Taxpayers challenge this narrow definition. The majority has avoided any discussion of the discrepancy between this definition and the broader

24

definition of armed forces in Section 21-1-4.5. Majority Opinion ¶¶ 13-16. Instead the majority only focused on whether the Department's regulation improperly modifies or narrows the statutory term "service in the armed forces of the United States" or should be consistent with the SCRA. *Id*.

{34}     To function efficiently and properly, the Department's narrow definition in 3.3.1.9(D)(5) NMAC—excluding all the other active duty USPHS officers not detailed with the army or navy—must be consistent with the statute and cannot be an arbitrary application of the statute. *See Rainbo Baking Co. of El Paso v. Comm'r of Revenue*, 1972-NMCA-139, ¶¶ 8-12, 84 N.M. 303, 502 P.2d 406 (noting that where regulatory authority exists to interpret statutes to which such regulation relates, the administrative agency exceeds its interpretative authority when it imposes a limitation that the Legislature did not prescribe). Nothing within the language of Section 7-2-5.11 or the SCRA supports this narrow definition. Nothing within the language of any other New Mexico statute, including Section 21-1-4.5, supports this narrow definition. I have already concluded in my previous analysis that the rules of statutory construction do not support this narrow definition. As a result, such a narrow definition was not contemplated by the Legislature, and excluding USPHS officers that are detailed with any branch of the United States military from qualifying for the personal income tax exemption is void because it modifies and abridges Section 7-2-

5.11 in a manner not contemplated or authorized by the Legislature. *See McCulloch*, 1963-NMSC-217, ¶¶ 12, 17 (voiding a tax regulation—adopted to deal with a non-resident tax exemption—that was not contemplated by the statute because it abridged, enlarged, extended, or modified the statute at issue); *Rainbo*, 1972-NMCA-139, ¶¶ 10-12 (recognizing that a tax regulation that imposed a time limitation on a deduction that the Legislature did not prescribe was, to that extent, void).

{35}     As a result, I do not agree with the majority regarding its recognition and use of the narrow definition of "armed forces" set forth in 3.3.1.9(D)(5) NMAC. If Mr. Hammack was detailed for active duty in the USPHS with any branch of the United States military for any of the tax years in question, then Taxpayers were entitled to an exemption under Section 7-2-5.11 for those qualifying tax years. The hearing officer only determined that Mr. Hammack was not detailed with two branches of the United States military, the army and the navy. The decision of the hearing officer should be reversed and remanded for further proceedings to properly address whether Mr. Hammack was detailed for active duty with any other branch of the United States military during any of the tax years in question.

_____
**TIMOTHY L. GARCIA, Judge**

26